## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MEHMET GENC,                                    :
    Plaintiff,                              :          CIVIL CASE NO.
                                            :          3:22-CV-00485 (JCH)
v.                                              :
                                            :
DANIEL M. RENAUD,                               :
UR MENDOZA JADDOU,                              :
ALEJANDRO MAYORKAS,                             :
    Defendants.                             :          FEBRUARY 5, 2024


### RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. NOS. 19 & 20)


## I.    INTRODUCTION

Plaintiff Mehmet Genc ("Genc") brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702; the Declaratory Judgment Act, 28 U.S.C. § 2201; and the Mandamus Act, 28 U.S.C § 1361, against defendants Daniel M. Renaud, the Director of the United States Citizenship and Immigration Services ("USCIS") Vermont Service Center; Ur Mendoza Jaddou, the Director of USCIS; and Alejandro Mayorkas, the Secretary of Homeland Security.  See Amended Complaint ("Am. Compl.") (Doc. No. 18).  Genc seeks judicial review of USCIS's denial of his application for a U nonimmigrant status visa ("U visa").

Before this court is the plaintiff's Motion for Summary Judgment, see Plaintiff's Motion for Summary Judgment ("Pl.'s Mot.") (Doc. No. 19), which the defendants oppose, see Defendants' Memorandum in Opposition to Motion for Summary Judgment ("Defs.' Opp.") (Doc. No. 22); and the defendant's Cross Motion for Summary Judgment, see Defendants' Motion for Summary Judgment ("Defs.' Mot.") (Doc. No.

20), which the plaintiff opposes, <u>see</u> Plaintiff's Memorandum in Reply to Defendants'
Motion for Summary Judgment ("Pl.'s Opp.") (Doc. No. 21).  For the reasons set forth
below, the plaintiff's Motion for Summary Judgment is granted in part and denied in part,
and the defendants' Motion for Summary Judgment is denied.

## II.    BACKGROUND

### A.    <u>Factual Background</u>[1]

Genc is a native citizen of Turkey.  <u>See</u> Plaintiff's Local Rule 56(a)2 Statement
("Pl.'s LR 56(a)2 Stmt.") ¶ 1 (Doc. No. 21-1); Defendants' Local Rule 56(a)2 Statement
("Defs.' LR 56(a)2 Stmt.") ¶ 1 (Doc. No. 22-1).  Genc entered the United States in July
2002 on an F-1 nonimmigrant student visa, which he overstayed.  <u>See</u> Pl.'s LR 56(a)2
Stmt. ¶¶ 1-2; Defs.' LR 56(a)2 Stmt. ¶¶ 1-2.

In March 2016, Genc "filed a Petition for U Nonimmigrant Status (Form I-918)[.]"
Pl.'s LR 56(a)2 Stmt. ¶ 3.  Genc's U visa application was accompanied by a law
enforcement certification (Form I-918, Supplement B), <u>see id.</u>, which is a form that
USCIS uses to "confirm to USCIS that a qualifying crime has occurred and that the
victim was helpful . . . in the investigation or prosecution of criminal activity."  <u>See</u> U
Visa Law Enforcement Certification Resource Guide ("Resource Guide"), Pl.'s Ex. 4, at
2 (Doc. No. 19-4).

---

[1] The court draws from the parties' Local Rule 56(a) Statements and the Administrative Record
(Doc. No. 13-2) in summarizing the material facts.  Unless otherwise noted, the facts are undisputed.

In addition, for ease of reference, the court cites to each party's respective Local Rule 56(a)2
Statement because, in accordance with Local Rule 56(a)2, they contain a reproduction of each numbered
paragraph from the moving party's Local Rule 56(a)1 Statement, as well as the nonmoving party's
admissions and denials.

Genc's U visa application "was based on an incident that took place" on February 2, 2007, while Genc was working at the A-1 Pizza restaurant in New Haven, Connecticut.[2]  See Pl.'s LR 56(a)2 Stmt. ¶ 4.  That day, Genc and his then-supervisor, Sezgin Ilitli ("Ilitli"), were assaulted by a group of men.  See id.; Administrative Record ("A.R.") at 224-27 (Doc. No. 13-2) (police report detailing incident).  According to an Affidavit by Genc, which was provided in the application, the men repeatedly struck and threatened Genc, hitting him hard in his face.  See A.R. at 231.  The police report, written within hours of the assault, stated that "Genc had minor swelling to his left side facial cheek bone area that was red."  See id. at 226.  After the assault, Genc helped the police identify the perpetrators.  See id. at 224-25, 231.  Notably, the law enforcement certification checked a box indicating that Genc was the victim of "Felonious Assault", a qualifying crime.  Id. at 218.  However, both the certification and the accompanying police report listed "simple assault", also known as assault in the third degree, and breach of the peace in the second degree, both of which are misdemeanor crimes, see Conn. Gen. Stat. §§ 53a-61,181, as the "statutory citation[s] for the criminal activity" that Genc helped authorities investigate or prosecute, see A.R. at 216, 222, 228.

On December 1, 2020, the USCIS Nebraska Service Center issued a Request for Evidence ("RFE") seeking additional evidence from Genc, including (1) evidence that the certifying law enforcement official met the USCIS's certification requirements, or, in

---

[2] An immigrant is eligible for a U visa if they establish, inter alia, that they have "suffered substantial physical or mental abuse as a result of having been a victim of qualifying criminal activity" and they have "been helpful . . . to a certifying agency in the investigation or prosecution of [said] qualifying criminal activity . . . ."  8 C.F.R. § 214.14(b).

the alternative, a new law enforcement certification, (2) evidence to show whether the underlying crime was a "qualifying crime", and (3) evidence that Genc suffered substantial physical or mental abuse due to the criminal activity. Pl.'s LR 56(a)2 Stmt. ¶ 7; Defs.' LR 56(a)2 Stmt. ¶ 4; A.R. at 202-204. After receiving COVID-19-related extensions, Genc filed a timely response to the RFE on April 27, 2021, by providing additional evidence, including arguments from Genc's counsel that he was a victim of assault in the second degree—a qualifying offense—as well as additional testimony and accompanying medical reports detailing the physical and mental trauma that Genc suffered due to the attack.[3] Pl.'s LR 56(a)2 Stmt. ¶¶ 8-9; Defs.' LR 56(a)2 Stmt. ¶ 6; A.R. at 108-115. The response to the RFE also indicated that a new law enforcement certification was forthcoming, and it included copies of email exchanges between Genc's counsel and the New Haven Police Department. Pl.'s LR 56(a)2 Stmt. ¶ 9; Defs.' LR 56(a)2 Stmt. ¶ 6; A.R. at 108, 125-126.

On May 17, 2021, USCIS issued a denial of Genc's application. Pl.'s LR 56(a)2 Stmt. ¶ 10; Defs.' LR 56(a)2 Stmt. ¶ 8; A.R. at 97-99. The Decision letter acknowledged receipt of Genc's evidence and stated that "[a]ll evidence was considered" in rendering the Decision, see A.R. at 98, and it then provided two grounds for the denial. First, the letter stated that:

---

[3] According to the additional testimony from Genc and accompanying medical reports, the attack caused Genc permanent damage to his left eye, harming his vision. See A.R. at 112-13 (testimony from Genc stating that "a few days after the attack, [his] vision started to get blurry, and to this day never healed completely"); id. at 110 (report from medical examiner concluding that "the field loss in [Genc's] left eye probably was caused by the [February 2007] assault").

The attack also caused Genc to suffer symptoms of post-traumatic stress disorder ("PTSD"). See id. at 111 (noting that Genc is undertaking "weekly individual cognitive behavioral therapy sessions to address symptoms of post traumatic stress disorder as well as monthly medication management sessions"); id. at 112-13 (testimony from Genc that the attack gave him PTSD).

> [Genc] did not submit evidence that the individual who signed [his] law enforcement certification met the qualifications of a certifying official, as defined above.  Therefore, the record does not contain a properly executed Form I-918, Supplement B as required by 8 CFR 214.14(c)(2)(i).

Id. at 99.  The denial further stated that:

> [Genc] did not submit a Form 1-918 Supplement B containing the certifying official's endorsement of a qualifying crime.  The certifying official's indication at Part 3.1 that [Genc was] the victim of felonious assault is without support in the record and not conclusory evidence that a petitioner is the victim of qualifying criminal activity.  Rather, it is Part 3.3 and relevant, credible evidence related to the investigation or prosecution that establishes the crime or crimes that the certifying agency detected, investigated, or prosecuted as having been committed against the victim.  Although the certifying official did not list any criminal statute in Part 3.3 of the Form, assault 3rd, simple assault and breach of peace 2nd were named and the accompanying evidence related to the investigation or prosecution shows the same.  Simple assault and breach of peace are not qualifying crimes; however, as [Genc's] petition is otherwise deniable, this issue need not be discussed further.

Id.  On July 21, 2021, Genc filed a motion to reopen the denial of his application, wherein he provided a new law enforcement certification and "some additional material, most of which had previously been submitted."  Pl.'s LR 56(a)2 Stmt. ¶¶ 12-13; A.R. at 57.  Again, the new certification checked the box for "Felonious Assault", although it listed simple assault and breach of the peace as the "statutory citation[s] for the criminal activity" that Genc helped investigate or prosecute.  Id. at 68.  On October 5, 2021, USCIS granted the motion to reopen, but, once again, denied Genc's application on two grounds.  See id. at 53-54.  The denial letter stated that the new certification "was not accompanied by evidence that the certifying official is the head of the certifying agency or a person in a supervisory role that has been specifically designated to issue U non immigrant status certifications on behalf of the agency."  Id. at 53.  The letter also stated that, "[f]urthermore, [Genc] was the victim of simple assault and breach of peace, both

nonqualifying crimes" and that he did not submit any new evidence to show that he was the victim of qualifying criminal activity.  Id. at 54.

On December 2, 2021, Genc filed a second motion to reopen the Decision, which included a new law enforcement certification; a letter from the New Haven Chief of Police indicating that he had "delegate[d]" the signatory, Lieutenant Jason Weted, as a "certifying official to issue a U Nonimmigrant Status Certification"; and a renewed argument from Genc's lawyers that the assault he experienced constituted qualifying criminal activity.  Pl.'s LR 56(a)2 Stmt. ¶¶ 17-18; Defs.' LR 56(a)2 Stmt. ¶¶ 10-11; A.R. at 23-27, 28-29, 45-47.  Again, the new certification checked the box for "Felonious Assault" but listed simple assault and breach of the peace as the "statutory citation[s]" for the relevant criminal activity.  A.R. at 24.  On February 4, 2022, USCIS dismissed Genc's motion on the grounds that the "motion neither provides new evidence, provides precedent decisions to consider, nor establishes that the decision was incorrect based upon the evidence of record at the time."  Id. at 1.

B.    Procedural Background

On April 3, 2022, Genc filed his initial Complaint in this action.  See Complaint (Doc. No. 1).  On November 28, 2022, Genc moved to amend his Complaint, which the defendants did not oppose.  See Consent Motion to Amend Complaint (Doc. No. 16). On November 29, 2022, the court granted Genc's Motion to Amend.  See Order (Doc. No. 17).  Count One of the Amended Complaint alleges that USCIS violated the Administrative Procedure Act ("APA") through its arbitrary and capricious denials of Genc's U visa application.  See Am. Compl. at ¶¶ 31-48 (Doc. No. 18).  Count Two seeks a declaration, pursuant to the Declaratory Judgment Act, that "the defendants

have failed to act in accordance with law and their own regulations by unlawfully withholding approval" of Genc's U visa application.  See id. at ¶¶ 49-50.  Count Three seeks, pursuant to the Mandamus Act, "a mandamus against the defendants to reopen and adjudicate" Genc's application.  See id. at ¶¶ 51-52.  On October 7, 2022, the defendants filed the Administrative Record of Genc's applications.  See Notice of Filing of Administrative Record (Doc. No. 13).

On December 8, 2022, Genc moved for summary judgment, see Pl.'s Mot., which the defendants oppose, see Defs.' Opp.  On December 9, 2022, the defendants cross-moved for summary judgment, see Defs.' Mot., which Genc opposes, see Pl.'s Opp.

## III.    LEGAL STANDARD

Under the APA, a reviewing court must set aside an agency decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  Judicial review under the "arbitrary and capricious" standard is narrow and deferential, and the court may not substitute its judgment for that of the agency.  See Dep't of Com. v. New York, 139 S. Ct. 2551, 2569 (2019).  When reviewing an agency's decision, the court must confine itself to "the administrative record compiled by that agency when it made the decision."  Nat'l Audubon Soc'y v. Hoffman, 132 F.3d 7, 14 (2d Cir. 1997).

An agency's decision is arbitrary and capricious if it "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for [the] decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  See Motor Vehicle Mfrs. Ass'n v.

State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  "In other words, so long as the agency examines the relevant data and has set out a satisfactory explanation including a rational connection between the facts found and the choice made, a reviewing court will uphold the agency action, even a decision that is not perfectly clear, provided the agency's path to its conclusion may reasonably be discerned."  Karpova v. Snow, 497 F.3d 262, 268 (2d Cir. 2007).

"[A] summary judgment determination is 'generally appropriate' in APA cases because 'the question whether an agency's decision is arbitrary and capricious . . . is a legal issue amenable to summary disposition.'"  Brezler v. Mills, 220 F. Supp. 3d 303, 321 (E.D.N.Y. 2016) (citing Noroozi v. Napolitano, 905 F. Supp. 2d 535, 541 (S.D.N.Y. 2012)).

IV.     DICUSSION

        A.     Subjection Matter Jurisdiction

Neither party contests that this court has jurisdiction to review USCIS's denial of Genc's U visa application.[4]  Nonetheless, because subject matter jurisdiction is nonwaivable, the court briefly addresses the issue.  As the Ninth Circuit persuasively held, sections 1101(a)(15)(U) and 1184(p) of title 8 of the United States Code "provide meaningful standards by which [a court can] review USCIS's denial of [an applicant's] U visa" under the APA.  Perez Perez v. Wolf, 943 F.3d 853, 867-68 (9th Cir. 2019) (internal quotation marks and citation omitted).  Federal courts, therefore, have the jurisdiction to review U visa decisions.  Id.  This court agrees with the Ninth Circuit, and it notes that other courts in this Circuit have likewise found that federal courts have

---

[4] Both parties agreed at oral argument that this court has subject matter jurisdiction in this case.

jurisdiction to review U visa decisions.  See, e.g., Ji Lin v. Mayorkas, 537 F. Supp. 3d 408, 414 (E.D.N.Y. 2021) (holding that federal courts have jurisdiction to review denials of I-918 petitions); Morris v. Nielsen, 374 F. Supp. 3d 239, 248-56 (E.D.N.Y. 2021) (reviewing denial of plaintiff's I-918 petition).  The court concludes it has subject matter jurisdiction over this case.

      B.     <u>Statute and Regulations</u>

          1.     Statutory and Regulatory Background

An immigrant may obtain a U visa if they (1) "ha[ve] suffered substantial physical or mental abuse as a result of having been a victim of [qualifying] criminal activity"; (2) "possess[ ] information concerning [the qualifying] criminal activity"; (3) "ha[ve] been helpful . . . to a . . . law enforcement official . . . investigating or prosecuting [the qualifying] criminal activity"; and (4) "the criminal activity . . . violated the laws of the United States or occurred in the United States[.]"  8 U.S.C. § 1101(a)(15)(U)(i).  Section 1101(a)(15)(U) then describes qualifying criminal activity as "involving one or more of the following or any similar activity in violation of Federal, State, or local criminal law", providing a list of specific criminal offenses such as torture, trafficking, sexual assault, kidnapping, false imprisonment, felonious assault, and obstruction of justice.  Id. § 1101(a)(15)(U)(iii).  "The term 'any similar activity'", as enumerated in the statute, "refers to criminal offenses in which the nature and elements of the offenses are substantially similar to the statutorily enumerated list of criminal activities."  8 C.F.R. § 214.14(a)(9).  "The rule's definition of 'any similar activity' takes into account the wide variety of state criminal statutes in which criminal activity may be named differently than criminal activity found on the statutory list, while the nature and elements of both

criminal activities are comparable." <u>See</u> New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status, 72 Fed. Reg. 53014, 53018 (Sept. 17, 2007).

To be considered for a U visa, an immigrant must file a petition with the USCIS via Form I-918, along with an accompanying law enforcement certification, <u>i.e.</u>, a Form I-918, Supplement B, which, as noted above, is a form that USCIS uses to "confirm . . . that a qualifying crime has occurred and that the victim was helpful . . . in the investigation or prosecution of [the qualifying] criminal activity." <u>See</u> Resource Guide at 2; <u>accord</u> 8 C.F.R. § 214.14(c)(2)(i) (providing that "Form I-918 must include" "Form I-918, Supplement B, 'U Nonimmigrant Status Certification,' signed by a certifying official within the six months immediately preceding the filing of Form I-918"). The burden is "on the petitioner to demonstrate eligibility for U-1 nonimmigrant status" and USCIS "will determine, in its sole discretion, the evidentiary value of previously or concurrently submitted evidence, including Form I-918, Supplement B[.]" 8 C.F.R. § 214.14(c)(4). In reaching its determination, the agency "shall consider any credible evidence relevant to the petition." 8 U.S.C. § 1184(p)(4).

2.    Analysis

Before addressing Genc's claims, the court briefly analyzes the relevant statutory language, as well as the accompanying regulations. As discussed above, the statute provides that an individual may obtain a U Visa if he has been the victim of, and has assisted in the investigation or prosecution of, "criminal activity". 8 U.S.C. § 1101(a)(15)(U)(iii). It enumerates a list of specific offenses constituting qualifying criminal activity and provides that "any . . . activity" that is "similar" to the enumerated

offenses also constitutes qualifying criminal activity under the statute.  Id.  It bears

noting that the statute does not state that an applicant's eligibility for a U Visa depends

on the specific criminal charges that are levied against the perpetrator, or on the

perpetrator's criminal convictions.[5]  Rather, the statute's repeated references to

"criminal activity" indicate that it is the underlying criminal conduct, and not the specific

statutory charges filed and prosecuted, that should ultimately determine whether an

applicant has been the victim of a qualifying crime within the meaning of the statute.

This reading coheres not only with the statute's text, but also its purpose.  As the

defendants acknowledge, "Congress created the U-Visa program as part of the Victims

of Trafficking and Violence Protection Act of 2000 . . . to provide immigration relief to

victims of certain crimes who cooperate with law enforcement in the investigation or

prosecution of a crime."  Defendants' Memorandum in Support of Motion for Summary

Judgment ("Defs.' Mem."), at 1 (Doc. No. 20-1); accord Victims of Trafficking and

Violence Protection Act of 2000, Pub. L. No. 106-386, 114 Stat. 1464 (Oct. 28, 2000)

(stating that "[t]he purpose of this section is to . . . strengthen the ability of law

enforcement agencies to detect, investigate, and prosecute" certain crimes "against

aliens, while offering protection to victims of such offenses" and noting that the U visa

program "will encourage law enforcement officials to better serve immigrant crime

victims").  As USCIS itself appears to recognize in its guideline materials, there are

times where a victim may have experienced and reported criminal activity and is

therefore warranted consideration for a U visa, even if "an arrest or prosecution cannot

---

[5] Indeed, at oral argument, both the plaintiff and the government acknowledged that the determination of whether an applicant has been the victim of qualifying criminal activity does not solely rely on the statutory charges filed against the perpetrator.

take place due to evidentiary or other circumstances." See Resource Guide at 4 (noting

that "the filing of charges" is "not required" for a law enforcement official to certify that

qualifying criminal activity has occurred).[6]

USCIS's regulations further confirm that the determination of whether an

applicant has been the victim of qualifying criminal activity does not hinge on the

specific criminal charges filed against the perpetrator. See 8 C.F.R. § 214.14(c)

(explaining that the Form I-918 requirements "must include", inter alia, a law

enforcement certification that "the applicant has been a victim of qualifying criminal

activity" and "[a]ny additional evidence that the petitioner wants USCIS to consider to

establish that[ ] the petitioner is a victim of qualifying criminal activity"); accord 72 Fed.

Reg. 53014, 53018 (noting that the list of qualifying criminal activity, as enumerated in

section 1101(a)(15)(U), "is not a list of specific statutory violations, but instead a list of

general categories of criminal activity", and that "the criminal activity listed is stated in

broad terms").

With these legal principles in mind, the court now addresses Genc's substantive

claims.

C.      Count One: Administrative Procedure Act

USCIS denied Genc's application on two grounds: (1) he did not submit evidence

to show that the person who signed his law enforcement certification met the

qualifications of a certifying official; and (2) his submitted Form 1-918 Supplement B did

---

[6] Matter of M-R-B-C, a nonprecedential decision by USCIS's Administrative Appeals Office
("AAO")—which plaintiff frequently cites, see Section IV.C n.6—similarly embraces the principle that it is
the facts of the underlying criminal conduct, and not the specific statutory citations, that should determine
whether a petitioner is the victim of qualifying criminal activity. See Matter of M-R-B-C, 2018 WL
2717434, at *3-5 (DHS May 15, 2018).

not establish that he was the victim of a qualifying crime.  USCIS has since retracted the first ground for its denial by "admit[ting] that the plaintiff established that the certification requirement was satisfied."  See Defs.' Mem. at 10.  Nevertheless, "when an agency relies on multiple grounds for its decision, some of which are invalid, [a court] may nonetheless sustain the decision as long as one is valid and 'the agency would clearly have acted on that ground even if the other were unavailable.'"  Xcel Energy Servs. Inc. v. FERC, 77 F.4th 1057, 1068 (D.C. Cir. 2023) (quoting Bally's Park Place, Inc. v. NLRB, 646 F.3d 929, 939 (D.C. Cir. 2011)).  As such, the crux of the disagreement between Genc and USCIS in the case at bar is whether USCIS was arbitrary and capricious in determining, as to the second ground of its decision, that Genc failed to prove that he was the victim of a qualifying crime.

After a close review of the Administrative Record, the court concludes that USCIS's Decision, as rendered, was arbitrary and capricious.  To survive under the deferential arbitrary and capricious standard, an agency need only "act[ ] within a zone of reasonableness" and "reasonably consider[ ] the relevant issues and reasonably explain[ ] [its] decision."  Fed. Commc'ns Comm'n v. Prometheus Radio Project, 592 U.S. 414, 423 (2021).  As such, the court looks to the Decision that USCIS rendered, including the explanation for the Decision.  The initial Decision stated that Genc "did not submit a Form 1-918 Supplement B containing the certifying official's endorsement of a qualifying crime."  A.R. at 99.  However, it then acknowledged that the certifying official did, in fact, "indicat[e] . . . that [Genc was] the victim of felonious assault", but went on to state: "[a]lthough the certifying official did not list any criminal statute in Part 3.3 of the Form, assault 3rd, simple assault and breach of peace 2nd were named and the

accompanying evidence related to the investigation or prosecution shows the same. Simple assault and breach of peace are not qualifying crimes[.]" Id.  In its subsequent denial of Genc's appeal, USCIS reaffirmed the second ground of its Decision on the basis that "[Genc] was the victim of simple assault and breach of peace, both nonqualifying crimes."  Id. at 54.  Based on the articulated reasoning for its Decision, it appears that USCIS found that Genc failed to establish that he was the victim of qualifying criminal activity.  In doing so, it appears, from the reasoning proffered by USCIS, that the agency relied entirely on the fact that the perpetrators of the assault against Genc were charged with simple assault and breach of the peace, rather than felonious assault.

As both the plaintiff and defendants recognize, (1) whether an assault qualifies as "felonious" is generally a matter of underlying state law, and (2) under Connecticut law, the substantive distinction between felonious assault and misdemeanor simple assault is, respectively, whether the perpetrator intended to cause "serious physical injury", as opposed to just "physical injury." Compare Conn. Gen. Stat. § 53a-60 (providing, inter alia, that "[a] person is guilty of assault in the second degree when . . . [w]ith intent to cause serious physical injury to another person, the actor causes such injury to such person or to a third person" and that "[a]ssault in the second degree is a Class D felony"), with id. § 53a-61 (providing, inter alia, that "[a] person is guilty of assault in the third degree when . . . [w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person" and that "[a]ssault in the third degree is a class A misdemeanor").

Notably, there was evidence in the record regarding the factual circumstances of the assault that could indicate that Genc was the victim of felonious assault—as the certifying officer identified—under Connecticut law, i.e., that his assailants intended to cause serious physical injury, even if the charges that were ultimately brought were misdemeanor assault and breach of the peace.  This evidence includes, inter alia: the February 2007 police report detailing how Genc and Ilitli were assaulted by multiple men, in which Genc's face was hit sufficient to cause "minor swelling to [the] left side of his cheek bone area [which] was red", A.R. at 224-27; Genc's February 2007 statement to the police stating that the group of men "threaten[ed]" and then started "swinging [at] and fighting" his boss, and that one of the men "follow[ed] [Genc] [and] struck [his] face [with] his fist", id. at 229; an April 2021 Affidavit from Ilitli explaining how the group of men attacked him, hurled threats at him, and then attacked Genc when he tried to intervene, including by hitting Genc "very hard in the eye" which caused his face to "swell[ ] up badly", id. at 114-15; an April 2021 Affidavit from Genc detailing the same and attesting that he was "hit . . . very hard by [his] eye area, and [he] was dazed for a while and in a lot of pain", id. at 112-13; and a letter from Genc's doctor stating that he has suffered significant, permanent damage to his left eye, likely because of the assault, id. at 110.

At no point in its Decision did USCIS address, even briefly, the relevance of any of this evidence.  Nor did it address the legal argument by Genc's lawyers analyzing the relevant state statutes and concluding that the assault that Genc experienced likely met the elements of felonious assault under Connecticut law.  Rather, as discussed above, USCIS appears to have improperly based its Decision solely on the statutory charges

that were brought against the perpetrators.  It seems that the closest USCIS came to

even acknowledging the underlying factual circumstances of the assault, as contained

in the record evidence—and, in turn, whether the assault legally met the elements of

felonious assault—was a conclusory assertion that "[t]he certifying official's indication at

Part 3.1 that [Genc was] the victim of felonious assault is without support in the record",

id. at 99, without any elaboration as to why the totality of the record evidence did not

support the certifying official's identification and failed to establish that Genc's assault

met the elements of felonious assault.  Because it is not evident from the explanation

that USCIS considered the relevant issues and credible evidence, USCIS's Decision

does not meet the standards of the APA, even under the deferential arbitrary and

capricious standard of review.  See Gomez v. Mayorkas, No. 21-CV-09232, 2022 WL

2276896, at *6 (N.D. Cal. June 23, 2022) (finding a USCIS U visa decision arbitrary and

capricious because it (1) failed to consider relevant issues and evidence and (2)

concluded that the assault suffered by the applicant was not "likely to produce great

bodily injury", without explaining "why the [assault] was not likely to produce great bodily

injury" (emphasis in original)).  While an agency is certainly not required to address

every piece of evidence, it must show that it considered the relevant factors.  See State

Farm, 463 U.S. at 30-31.  Indeed, as plaintiff notes, the agency Decision itself appears

to recognize that its reasoning was limited and incomplete.  See A.R. at 99 (stating that,

because Genc's "petition is otherwise deniable [because he did not submit a properly

executed Form I-918, Supplement B signed by a qualified official], this issue"—i.e., the

agency's conclusion that he failed to establish that he was the victim of a qualifying

crime—"need not be discussed further." (emphasis added)).  As noted above, the

defendants have since conceded that Genc did eventually satisfy the law enforcement certification requirement.  <u>See</u> Defs.' Mem. at 10.  Thus, his Petition was not "otherwise deniable" when the agency made its final, most recent decision on his application.  This admission by defendants reaffirms, to this court, that USCIS's Decision, as rendered, was not sufficiently and reasonably explained.

In sum, although USCIS has "sole discretion" to determine "the evidentiary value of previously or concurrently submitted evidence," <u>see</u> 8 C.F.R. § 214.14(c), it is still legally obligated to consider the relevant issues and credible evidence as to whether Genc was the victim of qualifying criminal activity, and to provide a "reasonably explained" decision.  <u>See</u> 8 U.S.C. § 1184(p)(4) (providing that the agency must "consider any credible evidence relevant to the [U visa] petition"); <u>Prometheus</u>, 592 U.S. at 423 ("The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained."); <u>Karpova</u>, 497 F.3d at 268 (noting that an agency must articulate "a satisfactory explanation including a rational connection between the facts found and the choice made"); <u>Henley v. Food & Drug Admin.</u>, 77 F.3d 616, 620 (2d Cir. 1996) (noting that "a reviewing court must be certain that an agency has considered all the important aspects of the issue and articulated a satisfactory explanation for its action" (internal quotation marks and citations omitted)).  Here, USCIS did not meet that obligation.[7]

---

[7] At oral argument, the government noted that the Administrative Record indicates that USCIS asked Genc for additional evidence as to whether he had been the victim of qualifying criminal activity before it rendered its denial; that USCIS acknowledged receiving Genc's proffered evidence; and that it stated that "[a]ll evidence was considered when rendering the final decision."  <u>See</u> A.R. at 98-99, 203-04.

However, the court respectfully disagrees with the argument that these cursory acknowledgments are sufficient to show that USCIS considered the totality of the evidence in the record when making its Decision.  As discussed above, the actual <u>explanation</u> as to the second ground of the denial strongly

Case 3:22-cv-00485-JCH   Document 27   Filed 02/05/24   Page 18 of 22

In their Motion for Summary Judgment, the defendants address some of the evidence proffered by Genc, concluding that "the record evidence does not establish that there was a desire to cause serious bodily harm as required for felony assault." See Defs.' Mem. at 15. The defendants also argue that "the assault suffered by the plaintiff is similar to what Connecticut courts have found to be third-degree assault", id. at 16, and they cite State v. Pauling, a Connecticut appellate court decision upholding a misdemeanor assault conviction for a defendant who choked, punched, and threw the victim into a wall, seriously damaging the victim's eye. 102 Conn. App. 556, 560 (2007). Notably, however, the jury in Pauling "found the defendant not guilty of the charge of assault in the second degree", so the Connecticut Appellate Court did not need to address that charge on appeal. Id. at 558 n.1. Instead, the court's analysis largely focused on whether the defendant's conviction for misdemeanor assault was supported by sufficient evidence. Id. at 566-68. It is not clear, from the appellate decision, why the jury decided, in that specific case, that the defendant warranted acquittal on the felonious assault charge. Thus, in the view of this court, Pauling appears to provide only limited insight into how Connecticut courts analyze felonious assault.

More importantly, this analysis by the defendants, regardless of its merits, comes too late. "[A] court may uphold agency action only on the grounds that the agency invoked when it took the action." Michigan v. EPA, 576 U.S. 743, 758 (2015). In its Decision denying Genc's application, USCIS never addressed or analyzed the factual circumstances of the assault, as detailed in the record evidence, and whether they

---

suggests that the statutory charges filed against the perpetrators of the assault were the only determinative factors behind USCIS's conclusion that Genc failed to show that he was the victim of qualifying criminal activity. Without a clearer explanation, the court cannot say, with any substantial confidence, that USCIS considered the record evidence and the relevant issues.

aligned with the elements of felonious assault and therefore constituted qualifying "criminal activity" within the meaning of section 1101(a)(15)(U). The defendants' subsequent attempt to provide factual and legal analysis in their Motion for Summary Judgment is therefore unavailing; they cannot retroactively mend the deficiencies of USCIS's Decision.[8]  See id.

The court concludes that USCIS's Decision denying Genc's U visa was arbitrary and capricious, in violation of section 706 of the APA. As the Second Circuit has held, "'[w]hen an administrative record is insufficient to permit [a court] to discern an agency's reasoning or to conclude that the agency has considered all relevant factors,' remand is appropriate." Kakar v. USCIS, 29 F.4th 129, 135 (2d Cir. 2022) (citing Brodsky v. U.S. Nuclear Regul. Comm'n, 704 F.3d 113, 119 (2d Cir. 2013)). Indeed, the court views remand to be particularly appropriate in this case because USCIS, by its own admission, did not render a full explanation when it decided that Genc failed to prove that he was the victim of qualifying criminal activity. See A.R. at 99 (stating that, "as [Genc's] petition is otherwise deniable, this issue need not be discussed further").

The court therefore remands the case to USCIS for further proceedings with instructions to consider the evidence regarding Genc's assault and to explain, in light of the evidence in the record, whether Genc has shown that he was the victim of qualifying criminal activity, that he was substantially harmed by said activity, and that he assisted in investigating said activity. In doing so, USCIS must evaluate the credible evidence as

---

[8] At oral argument, the government indicated that the analysis in its Memorandum—namely, the analysis of Pauling—was not intended to provide a post hoc rationalization, but rather to argue to the court that USCIS acted within a zone of reasonableness when it found that Genc was not the victim of felonious assault. Nonetheless, under the APA, this court's review is confined to the Decision and the explanation that USCIS rendered, and here, that explanation is inadequate to show this court that USCIS acted reasonably.

required by law and articulate a rational connection between the facts found and conclusions made, see Karpova, 497 F.3d at 268, regardless of whether it ultimately approves or denies Genc's application.[9]  The plaintiff's Motion for Summary Judgment as to Count One, on the ground that USCIS's Decision was arbitrary and capricious under the APA, is thus granted.  Defendants' Motion for Summary Judgment as to Count One is denied.

D.    Count Two: Declaratory Judgment

The plaintiff also requests that this court "enter a declaration that the defendants have failed to act in accordance with law and their own regulations by unlawfully withholding approval of Mr. Genc's otherwise qualified U-Visa petition", Am. Compl. at ¶ 50, and further asks the court to "[e]nter a declaratory judgment that Mr. Genc is a 'victim of qualifying criminal activity' for purposes of the regulations", id. at 11.  Here, the court views remand to the agency to be a sufficient and appropriate remedy.  A declaratory judgment stating that Genc was indeed the victim of a qualifying crime

---

[9] In his moving papers, Genc cites to Matter of M-R-B-C, a nonprecedential decision by USCIS in which the AAO of USCIS reversed a prior denial of a petitioner's U visa application because the denial "did not address or accord any weight to the certifying agency's decision to check the box for 'Felonious assault' in Part 3.1" and "did not discuss the relevance, if any, of the facts provided in the narrative portion of the Supplement B, criminal complaint, and other evidence in the record . . . ."  Matter of M-R-B-C, 2018 WL 2717434, at *3 (DHS May 15, 2018).  The decision in Matter of M-R-B-C, which the AAO reversed, was substantially similar to the agency's decision in this case because, in both cases, the agency appears to have hinged its decision on the underlying criminal charges.

As the defendants correctly note, because M-R-B-C is nonprecedential, it cannot bind USCIS in subsequent decisions.  See, e.g., Kompella v. USCIS, No. 20-CV-00190, 2021 WL 3883589, at *5 (D. Ariz. Aug. 31, 2021) (stating that nonprecedential AAO decisions "should be afforded little to no weight" and cannot bind USCIS); Tisco Grp., Inc. v. Napolitano, No. 09-CV-10072, 2010 WL 3464314, at *5 (E.D. Mich. Aug. 30, 2010) ("[T]he Court finds that the AAO decision relied on by Plaintiffs is non-precedential and is not binding on USCIS. . . . [T]herefore, even if USCIS's decision in this case was inconsistent with the non-precedential AAO decision cited by Plaintiffs, USCIS's decision is not reversible on that ground.")  However, this court notes that, while the USCIS Policy Manual proscribes officers from "rely[ing] upon" or "cit[ing] to" nonprecedential decisions, see USCIS Policy Manual § 10.18, M-R-B-C could nonetheless provide a helpful guidepost to USCIS in ensuring, on remand, that it provides a reasonably explained decision on Genc's application.

would, in this court's view, risk "substitut[ing] [the court's] judgment for that of the agency." Dep't of Com., 139 S. Ct. at 2570.   Accordingly, the court finds remand under the APA to be the proper remedy and declines to enter the specific declaratory relief requested by plaintiff.   The court therefore denies plaintiff's Motion for Summary Judgment as to Count Two.

     E.    Count Three: Mandamus

Additionally, Genc seeks "a mandamus against the defendants to reopen and adjudicate [his] U-Visa petition in accordance with law and controlling regulations."   Am. Compl. at ¶ 52.   "Mandamus is an extraordinary remedy, available only in extraordinary circumstances[.]"   Aref v. United States, 452 F.3d 202, 206 (2d Cir. 2006).   A court will not grant mandamus where, inter alia, there are other, adequate remedies available. See id. (noting that mandamus is only available where other available remedies are inadequate).   Here, plaintiff does not appear to dispute that the APA constitutes an available, adequate remedy in this case.   See Pl.'s Opp. at 23-24.   Accordingly, the court will not impose the extraordinary remedy of mandamus.   See Fangfang Xu v. Cissna, 434 F. Supp. 3d 43, 56 (S.D.N.Y. 2020) (stating that, because "an alternative adequate remedy would be possible under the APA," "no mandamus claim [is] necessary").   The court thus denies plaintiff's request for mandamus relief in Count Three.

## V.    CONCLUSION

For the reasons stated above, plaintiff's Motion for Summary Judgment (Doc. No. 19) is granted in part and denied in part, and defendants' Motion for Summary Judgment (Doc. No. 20) is denied.   The case is remanded to USCIS to further consider

and explain, based on the evidence in the record and in accordance with the law,

whether plaintiff meets the statutory requirements for U nonimmigrant status.

**SO ORDERED.**

Dated at New Haven, Connecticut this 5th day of February 2024.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge